## Shanklin, et al. v. Boyd, et al.

(Decided January 30, 1912.)

### Appeal from Mason Circuit Court.

1. District Schools—Supplemental Tax.—Under subsection 9 of section 4426a, Kentucky Statutes, a tax may be voted by a sub-district for local school purposes supplementing the money coming to the district for the county tax, but neither of the funds may be used to transport the children to and from school as the statute defines the purpose for which the money may be used.

.2. Same.—A tax levy "for local school purposes" is sufficient under section 189 of the constitution, as the statute defines the meaning of its terms and must be read into the levy.

WORTHINGTON & COCHRAN for appellant.

H. S. BARKER, ED. C. O'REAR, SLATTERY & REES and GEO. B. KENNEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

Pursuant to subsection 17 of section 4426a, Kentucky Statutes, four school districts in Mason County and a portion of another school district were consolidated. The consolidated school district is now educational subdistrict No. 4, subdivision No. 4 in Mason County. The board of education of educational division No. 4 ordered an election therein upon the question whether or not a tax of 20 cents on the $100 should be levied upon the taxable property in sub-district No. 4 "for local school purposes." One hundred and thirty-four votes were cast in favor of the tax and ninety against it. The tax thereupon levied. Since the election the board of education of the county have purchased seven wagons at a cost of $1,204 and have employed seven drivers to be paid at the rate of $40 a month, making in all $2,520 per annum to be paid out of the tax for local school purposes for the transportation of pupils from their homes to the school house in the consolidated district. This suit was brought in the Mason Circuit Court by certain taxpayers to enjoin the collection of the tax or any of its being used when collected for the purpose of furnishing transportation for pupils going to and from the school. The circuit court dismissed the petition; the plaintiffs appeal.

Section 4426a, Kentucky Statutes, is the act of March 24, 1908, entitled "An act for the government and regulation of the common schools of the State." By section 1, the county outside of a city or town maintaining a separate system of public schools, constitutes a school district. By section 2, the educational divisions are provided for. By section 3, the election of trustees is regulated; section 4 provides for the boards; section 5 defines the duties of the trustees; section 6 the employment of teachers; section 7 provides who shall be the chairman of the boards; section 8 provides how high schools may be established; section 9 is in these words:

"It shall be the further duty of the county board of education to estimate and lay before the fiscal court of the county the educational needs of the county in accordance with such estimate, and said county shall levy a tax for school purposes not to exceed twenty cents on each one hundred dollars of assessed valuation of property in the county, and a capitation tax not exceeding one dollar, and the sheriff shall then collect this tax as other State and county taxes are collected: * * * When the tax so levied shall have been collected by the sheriff of the county, he shall turn over to the county superin-

tendent, who shall act as treasurer of the county board of education, the amount of money so levied and collected, and the county board shall expend the money so received in the building, improvement and equipment of school houses, for the purchase and condemnation of necessary real estate, for the payment of teachers, purchasing necessary supplies and the extension of the school term in the various sub-districts throughout the county, as in their judgment as a county board the needs of the individual schools for white and colored pupils demand. The county superintendent shall give special bond as may be approved by the county court. No fund shall be paid out except on the order of the county board, signed by the chairman and countersigned by the secretary.

"Upon the petition of ten legal voters of any school sub-district, the board of education of any division shall submit to the legal voters of said sub-district the question whether or not a tax shall be levied upon the taxable property in such sub-district in any school year for local school purposes; an ad valorem tax may be so voted not to exceed twenty-five cents on each one hundred dollars of taxable property. Such questions shall be voted on at the regular school election held as provided by this act on the first Saturday in August, * * * and if it be ascertained that a majority vote in such district was cast in favor of such tax said board shall, on its minute book, enter an order levying such a tax in such sub-district, and it shall be the duty of the sheriff of the county on his official bond to collect such tax and hold the same subject to the order of the county board of education for the benefit of the sub-district voting such tax, and said sheriff shall receive the same compensation therefor as for collecting State and county revenue."

Section 10 provides how new districts may be established; section 11 for school buildings and repairs; section 12 provides that the county board of education shall be a body corporate; section 13 provides for records to be kept by the county superintendent; section 14 regulates high schools; section 15 regulates meetings of the board of education; section 16 regulates the reports of the educational divisions; section 17 provides for the consolidation of school districts and by section 18, all laws or parts of law in conflict with the act are repealed.

It is manifest from the act as a whole that it is simply a further regulation of the common schools and is to be read in connection with the statutes already in force;

for it was clearly not intended as the whole law on the subject. It creates the county board of education. The powers of that board, which is a creature of the statute, must be found in the statute. It will be observed that by section 9 the county board of education must estimate the amount necessary for the educational needs of the county and that it is the duty of the fiscal court then to levy a tax for school purposes not exceeding the limits specified. When the tax is collected it is paid over to the county superintendent, who is made by the act the treasurer of the county board of education; and the county board of education, it is provided, "shall expend the money so received in the building, improvement and equipment of school houses, for the purchase and condemnation of necessary real estate; for the payment of teachers, purchasing necessary supplies and the extension of the school term in the various sub-divisions throughout the county, as in their judgment as a county board, the needs of the individual schools for white and colored pupils demand. "It will thus be seen that the power of the county board in expending this money is carefully limited by the statute and under the statute the county board is not authorized to spend it for anything else; for the inclusion of certain things is necessarily the exclusion of all others; and if the board may go beyond the statute, there is nothing to guide it and no limit to its authority. This plainly was not intended for the power of the board is carefully defined.

The second paragraph of the section authorizes a tax to be levied upon a vote of the people in any school district for local school purposes, and it is provided that it shall be the duty of the sheriff to collect that tax and hold it subject to the order of the county board of education for the benefit of the sub-district voting the tax. The purpose of requiring the sheriff to hold this money subject to the order of the county board of education for the benefit of the district voting the tax, was evidently to put the fund under the control of the county board of education. It can only be paid out on the order of the county board signed by the chairman and countersigned by the secretary as provided in the first paragraph of the section. In other words the money can only be paid out by the county board of education, and it can only be paid out for the purpose for which the county board of education is authorized to order money paid out. It may be paid out for building, improving or equipping the

school houses or the purchase and condemnation of necessary real estate or the payment of teachers, purchasing necessary supplies or the extension of the school term in that sub-division. The county board of education is not authorized to order it paid out for any other purpose. It can not be maintained that wagons to haul children to and from school can be included in the terms "necessary supplies" for necessary supplies means necessary supplies for school purposes, and it is equally apparent that they are not included in the words "the extension of the school term." What those words mean is very familiar to all acquainted with our school laws. Our common schools are run for a term of so many months. For a number of years we have had statutes authorizing the voting of a tax to extend the school term or to give a longer term of school, and this is all that the terms mean here. The tax that is levied by the county is to be used by the county board of education for certain purposes all over the county in such manner as it sees best; that is, the fund is not to be divided ratably between the districts but it is to be paid out in the different districts as the county board sees fit paying one more than another if necessary. So it was that the second paragraph of the statute was added allowing any sub-district to vote a tax for local school purposes. The money so voted for local school purposes is all to be used in that district. But the purposes for which it may be used are defined in the previous part of the statute. If this were not so, the requirement that the money is to be held by the county board and paid out under its orders is meaningless. It has never been provided by statute in this State that any fund raised by taxation may be used in transporting the children to and from school; and if so radical a change in our school laws is desired, it should be expressed plainly. The presumption is that the terms used in this act were used in the same sense as in the previous statutes; for they were familiar terms when this act was passed and had a well understood meaning in common school matters. We are, therefore, of opinion that as much of the petition as sought to enjoin the board from using the money in buying the wagons and hiring the drivers stated a good cause of action. We do not hold that the Legislature may not provide for the levying of a tax for this purpose; we only hold that it has not yet done so. Expenses of this sort may be raised by subscription in a school district

but the majority can not vote a tax upon the minority unless authorized by law.

The order of the board of education levying the tax simply levied it "for local school purposes," and it is insisted that this is not sufficiently definite under section 189 of the Constitution (See City of Somerset v. Somerset Banking Co., 109 Ky., 549; Commonwealth v. United States Fidelity Co., 121 Ky., 409, and cases cited). The levy of the board follows the language of the statute. The tax levied for local school purposes under the statute is simply a supplement to the fund coming to the district from the tax levied by the fiscal court, and is to be paid out by the county board of education for the expenses of that school. The statute defines what is meant by the terms "for local school purposes." The statute must be read into the levy of the board and when this is done the order of the board specifies distinctly the purpose for which the tax is levied. So much of the petition as enjoined the collection of the tax, states no cause of action, and the circuit court properly dismissed it.

To this extent the judgment of the circuit court is affirmed. But on the other branch of the case the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent herewith.

While court sitting, Judge Nunn dissenting.