### Spence v. Commonwealth.

(Decided June 21, 1918.)

Appeal from McCracken Circuit Court.

1.  Criminal Law—Instructions.—While a trial court should in every felony case submit its instructions to the jury in writing, under

section 225 of the Criminal Code, yet defendant may, by agreement, waive the Code provision by consenting that instructions be oral, and such an agreement will be binding on him.

2. Criminal Law—Instructions.—When, by agreement of counsel for both sides, the court orally instructs the jury as to the law of the case, and the instructions thus given are taken in shorthand by the court reporter and immediately thereafter extended into typewriting and delivered to the jury while it is considering its verdict, and before a verdict is reached, section 225 of the Criminal Code is not violated.

3. Criminal Law—Evidence.—Evidence examined and held to sustain the verdict.

MOCQUOT & BERRY for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On the 8th day of January, 1918, the grand jury of McCracken county returned an indictment, accusing Fred Spence of the crime of robbery, "by feloniously and with force and violence and by putting him in fear, forcibly took from the possession of Lee Potter fifteen dollars lawful money of the United States, and of the value of fifteen dollars." The defendant being before the court the case was assigned for trial at the January term, but upon the calling of the case the defendant announced not ready and moved the court for a continuance, and filed in support thereof his own affidavit. This motion was sustained and the case continued to the second day of the next April term. The case was called on the second day of the April term and passed to a subsequent day of the same term for trial. On the day set a trial was had and the jury returned the following verdict: "We, the jury, find the defendant guilty as charged in the indictment and fix his punishment at ten years in the penitentiary." Within the time allowed counsel for defendant filed a motion and reasons for a new trial. The reasons set forth are as follows: (1) Because the verdict is against the law; and (2) because the court erred in instructing the jury; in giving the instructions orally and not in writing. Upon this point it is asserted that at the conclusion of the evidence the court dictated, in the presence of the jury, the instructions to the official stenographer, which instructions were numbered 1 and 2, but which were not written up by the official stenog-

rapher, or delivered to the jury for its consideration before the verdict was returned. It is further stated that after the return of the verdict, and on a subsequent day of the term of court the official stenographer did transcribe the instructions which had been given orally to the jury and taken down in shorthand by him, and placed a copy of the same in the clerk's office with the transcript of the record in this case.

The only question attempted to be made by appellant is, that the instructions of the court given to the jury were not in writing and that the jury did not have the benefit of written instructions while considering of their verdict. The facts upon this point, as shown by the evidence, are as follows: At the conclusion of the taking of testimony by agreement of the attorneys for the Commonwealth and the defendant, the court gave to the official stenographer the instructions in the presence of the jury and loud enough for the jury to hear and understand the same, and it was agreed by counsel that the argument to the jury should be had while the stenographer was engaged in transcribing the instructions from his shorthand notes. Pursuant to this agreement counsel did argue the case before the jury and the case was submitted to the jury, and the jury in charge of the sheriff retired to its room for deliberation. Very shortly thereafter the official stenographer presented a transcript of the instructions, in typewriting, to the judge of the court who thereupon immediately sent the same by the sheriff in charge of the jury, to the jury in the jury room, and the same was delivered to the jury before the verdict was rendered. These facts are fully established not only by the court stenographer, but by the sheriff, members of the jury and the trial judge. Judge Reed, who presided at the trial, makes this statement: "At the conclusion of the evidence in the case the court dictated to the jury, in the presence of counsel, the instructions numbers 1 and 2, a copy of which is filed by defendant with his motion for new trial herein.

"It was then agreed between the attorney for the Commonwealth, and the attorney for defendant, that they would argue the case while the stenographer was writing up the instructions. The stenographer did write up the instructions in a few minutes and the court marked them given. The court's best recollection is, that the instructions were marked given and delivered to the jury before they left their seats in the jury box in charge

of the deputy sheriff. At any rate they were either delivered to the jury or sent to the jury by the deputy sheriff having the jury in charge within a few minutes or seconds after they had retired, to make place for another jury which was desired to be and was being empaneled.''

The impression that the instructions were not in writing seems to have arisen from the fact that no copy of the instructions was found with the record in the case after the trial. That came about by one of the jurors who had the instructions putting them in his pocket in the jury room and forgetting to deliver them to the foreman when the verdict was returned. Some days after the jury had been discharged this juror testifies he found the instructions in his pocket and laid them out on his desk in his office, and they were afterwards thrown in the waste basket.

While this court is fully convinced from the evidence that the trial court gave to the jury written instructions embodying the law of the case before the rendition of the verdict, as is required by section 225 of the Criminal Code, yet we are equally certain that the defendant, Spence, had a right to and did waive his right to require the court to give the instructions in writing. Both the attorney for Commonwealth and attorney for defendant, who conducted the trial, testify that they agreed that the court might give the instructions orally to the jury and that the same should be extended into typewriting by the court reporter while the argument was proceeding before the jury. In the case of Allen v. Commonwealth, 148 Ky. 327, this court held that a defendant in a felony case may, by consent thereto, waive the code provision requiring instructions to be in writing. In the case of Adams Express Company v. Commonwealth, 163 Ky. 275, there is an expression used with reference to written instructions, which by some has been understood to be in conflict with the case of Allen v. Commonwealth, supra, but when the facts of the Adams Express Company case are understood, there is in fact no modification of the rule stated in the Allen case. If a defendant request a written instruction even in a misdemeanor case he is certainly entitled to it, but he may in a penal case waive written instructions by failing to make a request. Mobile & Ohio Ry. Co. v. Commonwealth, 122 Ky. 435. It would be reversible error for the court in a felony case to refuse to give instructions in writing upon the

request of the defendant, or to submit a case with only oral instructions in any instance, except where the defendant affirmatively assents thereto. The rule as stated in section 225 Criminal Code and construed in the Allen case, *supra,* was intended to avoid misunderstanding and prevent confusion in the minds of the jury as to what the court stated the law to be. Unless the instructions in a felony case are reduced to writing and presented to the jury before the return of the verdict, reversible error will be committed provided the defendant, by his counsel, does not expressly consent thereto. As all these things were done in this case there is a double reason why the judgment should not be reversed upon this ground, (1) because the instructions were, in fact, delivered to the jury in writing before the rendition of the verdict; and (2) the defendant by counsel agreed that the instructions might be given orally. In discussing the question of oral instructions in felony cases, this court in the case of Allen v. Commonwealth, *supra,* said:

"Undoubtedly, it is better practice in all felony cases for the court to instruct the jury in writing, although the accused may consent that they be instructed orally. . . . It was to prevent misunderstanding or misconstruction of the law that the code provision was inserted requiring instructions to be in writing. If the instructions are oral, the jurors may have different views as to what the court stated was the law of the case, and this of course might often result to the prejudice of the accused. . . . We do not think the code provision is one that may not be openly and affirmatively waived by the accused in a felony case. The right to demand or have written instructions is not a common law right or a right guaranteed by the Constitution. It is merely a statutory practice adopted for the protection of the accused; and unless it should appear—as it does in this case—that his substantial rights were prejudiced by the failure to give written instructions, we do not think he should be heard to complain of a practice to which he openly and affirmatively consented."

This rule is founded in reason and is intended to promote the ends of justice.

When we come to consider this case upon its merits we are wholly unable to find a word or syllable in the evidence that would excite the sympathy or elicit leniency of any court in behalf of this appellant. The robbery occurred about dark in November, 1917; the defendant is

a young man who has had the misfortune to lose an eye. This mark however renders him easy of identification. With a handkerchief over his face, he entered the store of the prosecuting witness, in Paducah, and with a pistol pointed at the proprietor, appellant said, ''Throw up your hands,'' and when the proprietor hesitated appellant again said, ''Throw them up, God damn you, I mean it, and if you say one word I will kill you.'' The proprietor then threw up his hands, whereupon appellant opened the cash drawer and took what money there was in it; turning again to the proprietor, appellant said, ''Give me what you have in your pockets;'' after some argument and hesitation on the part of the proprietor, appellant again said, ''You are a God damned liar, and if you do not get it out and lay it there on the counter I will kill you, and if I can not do it I have a partner outside who can.'' The whole amount obtained by appellant from the merchant was between fifteen and twenty dollars. Just as appellant backed out of the front door of the store with his pistol still pointed at the proprietor, two men came in and saw him. He, however, made his escape. Another witness was in the rear end of the store when appellant first came in and threw his pistol in the face of the proprietor and demanded that he throw up his hands. The proprietor of the store, by 'phone immediately called the police and informed them of the robbery. About ten o'clock that night Spence was arrested. In the meantime he had been seen with money of the denominations taken from the merchant. At the trial Spence failed to testify but introduced his mother and some neighbors and friends in an attempt to prove an alibi, which in its feebleness was pitiful. The jury had no trouble whatever in arriving at a verdict of guilty, and we feel that the evidence fully warranted the verdict. Ten years in the penitentiary is none too much for a criminal of the character this evidence proves appellant to be. It was a bold, bad robbery and the defense was chimerical. While we fully agree with counsel that all persons charged with crime are entitled to a full and fair hearing and to the protection of the law, nevertheless we do not feel that criminals who openly invade the law by the commission of such inexcusable crimes as robbery should find protection and solace therein after they have been overtaken in their wickedness. At least the courts should not exercise themselves to discover reasons for sustaining technical or refined objections to

ward off the penalties of the law. Such cases should be speedily disposed of. No unnecessary delay should be indulged. The culprit should be brought to justice. Where one's cause is not countenanced either by justice or law, it must necessarily fail.

Judgment affirmed.