## Janutola & Comadori Construction Company v. Taulbee, et al.

(Decided November 20, 1925.)

### Appeal from Perry ·Circuit Court.

1. Municipal Corporations—City of Fourth Class May Let Contract for Part of Work Contemplated by Ordinance.—Under Ky. Stats., section 3571, giving council of city full power over paving of streets, and providing for a liberal construction of such power, city of fourth class has authority to let a contract for part only of work contemplated by ordinance.

2. Municipal Corporations—Contract for Grading and Drainage Proper, Though Ordinance did Not Mention Drainage.—Contract let by city for grading and drainage was proper, though ordinance authorizing work did not mention drainage, but provided that improvements should be constructed in accordance with plans and specifications of city engineer, which provided for drainage, and drainage was essential to make improvement lasting.

M. K. EBLEN for appellant.

D. G. BOLEYN and W. A. STANFILL for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

By this action the appellants, whom we will refer to as the plaintiffs, aserted a lien upon the property of the appellees, whom we will refer to as the defendants, for street improvements. A demurrer was sustained to the plaintiffs' petition, they declined to amend, their action was dismissed, and they have appealed.

Janutola & Comadori Const. Co. v. Taulbee.   357

The city of Hazard is a city of the fourth class, and on July 17, 1922, it passed an ordinance containing the following:

"That each of the following streets shall be improved by grading and paving with concrete, reinforced concrete, waterbound macadam, Kentucky rock asphalt, or other bituminous types of construction equally as good. . . . East Main street, district No. 29. 'East Main street, beginning at the end of the present improved street and running south approximately a distance of 900 feet.' . . . The cost and expense of improving each district shall be paid by the owners of abutting property on each district and according to the number of front feet abutting thereon, and the cost in each district shall be taken separately and assessed against the property abutting on each district."

There was no question made about the adoption of the resolution declaring such work to be a necessity, the passage of the ordinance or the publication of these. This litigation grew out of the fact that on February 5, 1923, the city of Hazard entered into a contract with the plaintiffs for the grading and drainage only of East Main street district No 29. No question is made about the grading and drainage having been done in accordance with the contract, and it is admitted that it has been duly and regularly accepted by the city in the manner provided by law, and that assessments to pay therefor have been properly made and levied upon the property of the defendants.

The circuit court took the view that all the work provided for in the ordinance was not completed and that no assessment could be made until the work had been finished in accordance with the ordinance, and held that the city of Hazard had no right to let the building of the street in any way except in strict compliance with the ordinance, and that as the petition showed upon its face that the ordinance had not been fully complied with, the circuit court sustained a demurrer to it and dismissed plaintiffs' petition when they declined to plead further.

By section 3571, the board of council of the city of Hazard had full power to determine just what streets, alleys, etc., or parts thereof, should be improved, the kind

of material to be used, the necessity for the improvement, and the extent thereof. The council did determine that this particular street should be improved by grading and paving same with some of the types of paving set out in the ordinance. The question presented by this record is: Can a city of the fourth class, in improving its streets, let a contract to one man to do one part of the improvement, and to another to do another part, or must it let the contract for the entire improvement at one time to one man? A strict construction of this statute—and the trial court gave it a strict construction—would forbid such a course, but in the latter part of the section the legisture put this provision:

> "All courts will give a liberal construction to the rights and powers of the board of council under this act."

Since all courts are required to give a liberal construction to the rights and powers of the board of council, it follows that the trial court erred in adjudging that the city had no right to let a contract for any work less than a completed job as contemplated by the ordinance. The city had a right to let to the plaintiffs a contract to do a part of the work contemplated by the ordinance. It did so. The plaintiffs have fulfilled that contract, and the liens assessed against the property of defendants to pay for this work should have been enforced.

It is suggested that this contract provides for the grading and drainage, whereas nothing is said about drainage in the ordinance, but we find that the ordinance provides this:

> "Said improvement shall be constructed in accordance with the plans and specifications on file in the office of the city engineer, and said plans and specifications are made a part hereof as fully as if copied herein."

It is not suggested that there was any drainage work done that was not in accordance with the plans and specifications on file in the office of the city engineer. Common sense would suggest that this work be done in such a way as to make it a lasting improvement, and we all know that unless some provision is made for the drainage of the improvement, the water falling and flowing upon it as a result of the rainfall would soon destroy it. Therefore, it

follows that the city council had not only the right to provide for the drainage of the street, but that it was its duty to do so.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.